UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
ANGELA VOMERO,

                Plaintiff,

       - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-5799 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Angela Vomero filed this action pursuant to 28 U.S.C. § 405(g) to challenge an adverse determination by the Social Security Administration ("SSA"), which denied Plaintiff benefits. After the parties filed cross-motions for judgment on the pleadings, the Court granted Plaintiff's motion and remanded to the SSA, where Plaintiff was awarded roughly $101,937 in past-due benefits. Plaintiff's counsel, Daniel Adam Osborn of Osborn Law, now moves for $25,484.25 in attorney's fees pursuant to 42 U.S.C. § 406(b). For the reasons explained below, Osborn Law's motion is granted.

## BACKGROUND

After Plaintiff was denied benefits at the agency level, Plaintiff retained Osborn Law and filed this action on October 15, 2019. (Dkt. 1.) After the parties filed cross-motions for judgment on the pleadings, and Plaintiff filed a reply, the Court granted Plaintiff's motion and remanded to the SSA. (*See* Dkt. 16.) This Court then awarded Plaintiff $7,000 in attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (Dkt. 18; 04/01/2021 Docket Order.) On March 30, 2022, Osborn Law received a notice of award letter, informing it that Plaintiff would receive approximately $101,937 in past-due benefits, with 25% ($25,484.25) withheld as possible

fees for her attorney.  (Dkts. 19-6; 19-8 at 2–3.[1])  By motion filed on April 12, 2022, Osborn Law

now seeks $25,484.25 for work performed before this Court.  (Dkt. 19-8 at 6.)

Along with Osborn Law's motion, counsel submitted a fee agreement, demonstrating that

Vomero retained Osborn Law on a 25% contingency-fee basis, and itemized time records,

indicating that it spent a total of 34.7 hours litigating this matter before this Court.  (Dkt. 19-8 at

6.)  $25,484.25 for 34.7 hours of work would be an effective hourly rate of $822.68 per hour.[2]

## DISCUSSION

### I.     Timeliness

Motions for attorney's fees under 42 U.S.C. § 406(b) must be filed within the 14-day filing

period proscribed by Rule 54(d) of the Federal Rules of Civil Procedure.  *Sinkler v. Berryhill*, 932

F.3d 83, 91 (2d Cir. 2019).  The 14-day period begins to run from when "counsel receives notice

of the benefits award," and the law presumes that "a party receives communications three days

after mailing."  *Id.* at 87–89 & n.5.  Furthermore, because Rule 54(d) allows judges to extend the

14-day deadline by court order, "district courts are empowered to enlarge that filing period where

circumstances warrant."  *Id.* at 89.

Plaintiff's counsel received the notice of benefits award on March 30, 2022.  (Dkt. 19-8 at

2–3.)  This motion was filed on April 1, 2022.  (Dkt. 19.)  The motion is thus timely filed.

---

[1] The letter does not state the exact amount of past-due benefits awarded, but notes that the SSA "usually" withholds 25% for potential attorney's fees and, in this case, was withholding $25,484.25.  (Dkt. 19-6.)

[2] In Osborn Law's brief, it notes that it spent 34.7 attorney hours on this case.  (Dkt. 19-8 at 6.)  In the following sentence, however, when calculating its *de facto* hourly rate, counsel inexplicably shaves 4 hours from the hours it spent on this case, and says its *de facto* hourly rate was $929.87.  (*Id.*)  The Court has reviewed counsel's contemporaneous time records, which makes clear that 34.7 is correct.  (Dkt. 19-3.)

II.     **Reasonableness of the Requested Fee**

A.      **Legal Standard**

Section 406(b) of the Social Security Act provides that a court may award a "reasonable

fee . . . not in excess of 25% of the total of the past-due benefits to which the claimant is entitled."

42 U.S.C. § 406(b).  If the contingency percentage is within the 25% cap, and there is no evidence

of fraud or overreaching in making the agreement, a district court should test the agreement for

reasonableness.  *Fields v. Kijakazi*, 24 F.4th 845, 853 (2d Cir. 2022).

To determine whether a fee is reasonable, a district court should consider (1) the character

of the representation and the results the representative achieved; (2) whether counsel was

responsible for a delay, unjustly allowing counsel to obtain a percentage of additional past-due

benefits[3]; and (3) whether the requested amount is so large in comparison to the time that counsel

spent on the case as to be a windfall to the attorney."  *Id.* at 849 & n.2, 853.

With respect to whether a fee would be a "windfall," in *Fields* the Second Circuit

emphasized that "the windfall factor does *not* constitute a way of reintroducing the lodestar method

and, in doing so, . . . indicate[d] the limits of the windfall factor."  *Id.* at 854.  Rather, "courts must

consider more than the de facto hourly rate" because "even a relatively high hourly rate may be

perfectly reasonable, and not a windfall, in the context of any given case."  *Id.*  The Second Circuit

instructed courts to consider (1) "the ability and expertise of the lawyers and whether they were

particularly efficient, accomplishing in a relatively short amount of time what less specialized or

---

[3] This is because the amount of benefits a successful plaintiff receives is calculated from
the date of onset up to the date the SSA awards benefits on remand.  *See Fields*, 24 F.4th at 849
n.4 ("Undue delay can be a particular problem in cases like these, in which past-due benefits are
at stake.  Because delay increases the size of a plaintiff's recovery, it may also increase
disproportionately a lawyer's contingent fee recovery.  [W]here the attorney is responsible for
delay, the attorney should not be allowed to profit from the accumulation of benefits during the
pendency of the case in court." (internal quotation marks and citation omitted)).

less well-trained lawyers might take far longer to do," (2) "the nature and length of the professional relationship with the claimant—including any representation at the agency level," (3) "the satisfaction of the disabled claimant," and (4) "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." *Id.* at 854–56. Ultimately, a district court may reduce the amount called for in the contingency fee agreement "only when [the court] finds the amount to be unreasonable," after considering the factors outlined above. *Id.* at 852–53.

In addition, if fee awards are made to a claimant's attorney under both the EAJA and § 406(b), the attorney must refund the claimant the amount of the smaller fee. *Gisbrecht v. Barnhart*, 535 U.S. 789, 789 (2002); *Wells v. Bowen*, 855 F.2d 37, 48 (2d Cir. 1988) ("Once appropriate fees under 42 U.S.C. § 406(b) are calculated, the district court should order [the attorney] to return the lesser of either that amount or the EAJA award to his clients."); *Barbour,* 2014 WL 7180445, at *2 (citing *Porter v. Comm'r of Soc. Sec.*, No. 06-CV-1150 (GHL), 2009 WL 2045688, at *3 (N.D.N.Y. July 10, 2009)).

**B.    Application**

Here, Plaintiff retained Osborn Law pursuant to a 25% contingency-fee agreement. (Dkt. 19-2.) There are no allegations of fraud or overreaching with respect to the retainer agreement. Osborn Law seeks the full 25% of Plaintiff's past-due benefits. At 34.7 hours of work, that would be an effective hourly rate of $822.68 per hour. For the reasons explained below, the Court does not find that amount to be unreasonable in the context of this case.

With respect to "the character of the representation and the results the representative achieved," the Court notes that counsel's briefing was professional, and identified and developed the single critical issue that warranted remand in this case. Osborn Law achieved the exact result

4

the client hoped for, *i.e.*, an award of benefits, and was the cause of only one, brief delay in receiving those benefits, which was justified, as discussed next.

With respect to whether counsel was responsible for a delay, the Court notes that Osborn Law did request a six-week extension to file its opening brief. (Dkt. 10.)  The Court also notes, however, that the extension was requested March 2020, just as the COVID-19 pandemic was beginning to disrupt many facets of life.  (*Id.*)  In the context of this case, the Court thus does not find this consideration warrants a downward adjustment.

With respect to "the ability and expertise of the lawyers and whether they were particularly efficient," the Court believes that 34.7 hours was a reasonable amount of time to expend on this case.  In *Fields*, the Second Circuit found that 25.8 hours reviewing an 863-page transcript, drafting a 19-page brief, and then obtaining a stipulation of dismissal demonstrated particular efficiency, and that "other lawyers might reasonably have taken twice as much time" to do the same work, justifying a *de facto* hourly rate of $1,556.98.  24 F.4th at 854.  Here, the transcript was 914 pages (Dkt. 9), the opening brief was 24 pages (Dkt. 11-1), and Plaintiff's counsel was also required to draft a reply brief, which was timely filed in August 2020 (Dkt. 15).

With respect to "the nature and length of the professional relationship with the claimant— including any representation at the agency level," the Court notes that Osborn Law did not represent Vomero in front of the SSA before filing this suit.  (*See* 19-2 (retainer signed one day before this case was filed).)  In *Fields*, plaintiff's counsel had represented the plaintiff from the start of his agency proceedings, including four separate hearings before Administrative Law Judges and multiple petitions to the SSA Appeals Council, further enabling plaintiff's counsel to efficiently brief its arguments before the district court, and distinguishing the case from some other cases that had found a windfall.  *See id.* at 855.  Because Osborn Law did not represent Vomero

before the SSA, Osborn Law had not briefed the issues before filing this case, and was thus necessarily less efficient. However, because Osborn Law expended less than 10 more hours than counsel in *Fields*, and seeks a significantly lower *de facto* hourly rate than in that case, the Court does not find that this factor justifies a downward adjustment in this case.

With respect to "the satisfaction of the disabled claimant," the Court again notes that Osborn Law achieved the desired result, with only one brief delay, and there is no evidence in the record to suggest that Vomero was dissatisfied with any aspect of Osborn Law's performance.

With respect to "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result," the Court notes that there was only one ground for reversal, and that ground—the residual functional capacity not being supported by substantial evidence—can be a difficult ground on which to succeed. Accordingly, the Court does not find that this factor warrants a downward adjustment in this case.

For the reasons explained above, the Court finds the requested amount to be reasonable. Upon receiving the § 406(b) award, Osborn Law must remit the $7,000 received pursuant to the EAJA to Plaintiff.

## CONCLUSION

For the foregoing reasons, it is hereby ordered that the motion for attorney's fees under 42 U.S.C. § 406(b) is granted, and Osborn Law is awarded $25,484.25. Upon receipt of this award from the government, Osborn Law shall promptly refund Plaintiff $7,000, which represents the EAJA fees already received by counsel. The case remains closed.

SO ORDERED.

*/s/ Pamela K. Chen*

Pamela K. Chen
United States District Judge

Dated:  July 25, 2022
         Brooklyn, New York